**In Anonymous No. 121 D.B. 88**

Disciplinary Board Docket no. 121 D.B. 88.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

GILBERT, *Member,* November 20, 1989 — Pursuant to rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations regarding the above-captioned petition for discipline.

## HISTORY OF PROCEEDINGS

Respondent was admitted to practice law in the Commonwealth of Pennsylvania on December 11, 1984. His office was located at [  ]. Respondent presently is under suspension from the practice of law by order of the Supreme Court of Pennsylvania and maintains no office for the practice of law. Respondent works as a legal assistant with [  ] County Legal Aid.

Upon respondent's voluntary petition, the Supreme Court of Pennsylvania suspended respondent from the practice of law by order dated November 18, 1988 and referred the matter to the Disciplinary Board pursuant to rule 214(f), Pa.R.D.E.

The Supreme Court order arose from respondent's plea of guilty in the U.S. Federal Court for the [  ] District of Pennsylvania to one count of obstruction of justice in violation of Title 18, U.S.C. §1503.

On January 3, 1989, the Honorable [A], Judge of the U.S. District Court for the [  ] District of Pennsylvania, sentenced the respondent to probation for a period of two years, with the direction that respondent perform 150 hours of community service; that he comply with certain specified conditions of probation; and that he pay a special assessment of $50.

On February 13, 1989, the Office of Disciplinary

Counsel filed a petition for discipline charging that respondent assisted another lawyer in advising a grand jury witness to destroy records covered by the grand jury subpoena, to create false records and to testify falsely in regard to the records.

On April 6, 1989, the matter was referred to Hearing Committee [  ] consisting of [  ]. A hearing was held July 14, 1989, in which the committee recommended that respondent be suspended for a period beginning June 9, 1988 (the date respondent claims to have voluntarily ceased the practice of law) and ending January 3, 1991 (the date of the expiration of respondent's probation imposed by Judge [A]). The committee also recommended that respondent's suspension be lifted earlier if respondent is released from probation prior to the stated date of January 3, 1991. It is the intention of the committee that respondent's suspension be coterminous with his federal probation.

On September 21, 1989, respondent through counsel filed a brief opposing exceptions in which they advocated adopting the hearing committee's recommendation in its entirety.

Thereafter, the matter was referred to board member [  ] for review and recommendation to the full board. The matter was adjudicated by the board at its scheduled meeting October 24, 1989.

## FINDINGS OF FACT

(1) Respondent, a 1984 graduate of [  ] Law School, was admitted to practice before the Supreme Court of the Commonwealth of Pennsylvania on December 11, 1984. Shortly before his admission he obtained full-time employment with the law firm of [B] & Associates in [  ]. [B's] practice was principally personal injury work, but respondent spent

approximately 65 percent of his time on criminal matters.

(2) By 1987, respondent had grounds upon which to infer that [B] was possibly engaged in illegal, unethical, and improper activities. Specifically, he found that [B] had padded costs on the settlement sheet of a client whom respondent had referred to the firm for a personal injury matter. Also, through his representation of a secretary in [B's] office, respondent became aware of fraudulent medical claims filed by another attorney which involved a doctor named [C]. Respondent knew [C] was both a personal friend of [B's] and a business associate who did claims work with [B].

(3) On October 7, 1987, respondent was directed by [B] to join a meeting among [B], his administrative assistant, and [C] in regard to [C's] response to a grand jury subpoena of his records. Respondent was not aware of what occurred prior to his entering the meeting nor did he know [C] was wearing a microphone which transmitted the conversation to federal investigators.

(4) During the time he participated in the meeting (about 45 minutes out of a two-hour and 25-minute meeting), respondent assisted [B] in advising [C] to conceal and destroy records covered by the grand jury subpoena, to create false records, and to testify before the grand jury falsely with respect to the records.

(5) About two weeks later, respondent received a "target letter" from the U.S. Attorney's Office advising him he was the target of an investigation by the federal government for possible acts of obstructing justice. Despite respondent's claim that he knew he had made a mistake in assisting [B] at the October meeting, respondent did nothing about and notified

no one of [B's] illegal and unethical activities until he received the target letter.

(6) Upon receipt of the target letter, he contacted counsel and began his own private investigation of [B's] activities. By comparing settlement sheets with actual cost cards in [B's] files, he established that [B] had, in fact, defrauded clients of money otherwise due them.

(7) Respondent turned over to the U.S. Attorney's Office the evidence against [B] he had obtained and throughout (after receipt of the "target letter") he cooperated fully with that office. ([B] was subsequently convicted and sentenced to a five-year term in prison. He was subsequently disbarred.)

(8) On June 8, 1988, respondent was charged in the U.S. District Court for the [ ] District of Pennsylvania with one count of obstruction of justice in violation of Title 18, U.S.C. §1503.

(9) Respondent later claimed he voluntarily ceased practicing law the next day (June 9) but there was no evidence presented to support this conclusion. (This is relevant to the subsequent date of his recommended suspension from the practice of law. See "Discussion" to follow).

(10) On June 21, 1988, respondent entered a plea of guilty to one count of obstruction of justice with which he was charged.

(11) In October 1988, and on advice of counsel, respondent voluntarily requested that he be suspended from the practice of law.

(12) On November 18, 1988, by order of the Supreme Court of Pennsylvania, respondent was suspended from the bar of the commonwealth, pursuant to rule 214(d), Pa.R.D.E.

(13) On January 3, 1989, respondent was sentenced by the Honorable [A], judge of the U.S. District Court for the [ ] District of Pennsylvania,

to probation for a period of two years, with the direction that he perform 150 hours of community service; that he comply with certain specified conditions of probation; and that he pay a special assessment of $50.

(14) Respondent is currently under suspension and working as a legal assistant with the [   ] County Legal Aid.

(15) At the hearing, six members of the [   ] County bar testified to respondent's good character and reputation among the legal community. Two witnesses testified to respondent's public service in a local [   ] Club and a woman testified that respondent has been a "Big Brother" to her son for about three years, has given generously of his time to the boy, who does not live with his father, has taken him on trips, and has been a very good influence on her son.

## CONCLUSIONS OF LAW

Respondent has violated the following disciplinary rules:

D.R. 1-102(A)(4) - A lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

D.R. 1-102(A)(5) - A lawyer shall not engage in conduct that is prejudicial to the administration of justice.

The board concurs with the hearing committee's finding that respondent did not violate the following disciplinary rules as alleged in the petition for discipline:

D.R. 1-102(A)(3) - Engaging in illegal conduct involving moral turpitude and

D.R. 1-102(A)(6) - Engaging in conduct that adversely reflects on fitness to practice law.

## DISCUSSION

The sole issue before this board is the appropriate measure of discipline to be recommended to the Supreme Court of Pennsylvania.

There can be no question that respondent's assistance in advising a witness to testify falsely in a court of law involves an abuse of his training and position as a lawyer. Furthermore, respondent's conduct, which led to his conviction of one count of obstruction of justice, has a serious and detrimental impact upon the public's confidence in our legal profession and the ability of the legal system to protect the public.

In spite of the fact that the certificate of conviction serves as conclusive evidence of respondent's guilt, it is our duty to consider the events which surround the criminal charges in order "to weigh the impact of the conviction upon the measure of discipline." *Office of Disciplinary Counsel v. Eilberg,* 497 Pa. 388, 441 A.2d 1193 (1982), citing *Office of Disciplinary Counsel v. Troback,* 477 Pa. 318, 383 A.2d 952 (1978).

Thus, the board recognizes certain mitigating circumstances in this case which in no way excuse respondent's conduct, but are considered in determining the appropriate discipline. The matter before this board involves a single episode in which respondent, in the words of the judge issuing sentence, made a "grievous error in judgment without any time to think about it," and that that error was "completely at variance with [his] personality and character." Since the time of his original suspension, respondent has worked conscientiously as a legal assistant in the [   ] County Legal Aid.

A volume of letters submitted at the time of his sentencing and testimony by character witnesses

before the hearing committee, including testimony by six members of the [   ] County Bar, all support the conclusion that the young man is regarded as a caring, ethical individual who made one serious error in judgment.

Respondent has shown remorse for his misconduct, is doing the required hours of community service, is involved in other types of community activity ([   ], [   ] Organization, among others) and from the evidence presented he still has a good reputation in his local community.

The board also recognizes the fact respondent assisted the federal authorities in their investigation, but respondent's assistance only began after he was made aware of the fact that he was a target of the federal investigation and his own personal reputation was at stake.

The Disciplinary Board takes the position that it is inappropriate to make respondent's suspension retroactive to June 9, 1988, the day after respondent was indicted and the day respondent claims to have voluntarily ceased the practice of law. Respondent's claim of voluntarily transferring to inactive status is not supported by the evidence presented at the hearing. More importantly, the Supreme Court of Pennsylvania did not make its earlier suspension retroactive to June 9, 1988. The board also rejects the concept of making the suspension coterminous with the respondent's federal probation as, in effect, having the disciplinary system of the commonwealth abdicate its responsibilities to adjudicate its own disciplinary cases.

## RECOMMENDATION

Bearing in mind the seriousness of the respondent's misconduct, yet tempering the sanction in

light of his full cooperation with the authorities, his relative youth and inexperience, and his good reputation in the community, the board recommends the respondent be suspended for 2 years and 3 months with the suspension to be dated from November 18, 1988.

## ORDER

And now, March 29, 1990, respondent's petition to reopen record is granted. Upon consideration of the report and recommendations of the Disciplinary Board dated November 20, 1989, it is hereby ordered that [respondent] be and he is suspended from the bar of this commonwealth for a period of two years and three months, effective November 18, 1988, and he shall comply with all the provisions of rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to rule 208(g), Pa.R.D.E.