## In re Anonymous No. 60 D.B. 91

Disciplinary Board Docket no. 60 D.B. 91.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

CARSON, *Member,* March 8, 1993—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. *History of Proceedings*

On May 21, 1991, the Pennsylvania Supreme Court issued an order temporarily suspending respondent from

the practice of law, and directing him to comply with all provisions of Rule 217, Pa.R.D.E.

The Office of Disciplinary Counsel filed a petition for discipline of respondent, on June 10, 1991, for the conduct which led to his temporary suspension from the Pennsylvania bar. The petition alleged that respondent acted unprofessionally when he tampered with public records and information and engaged in criminal conspiracy, charges to which he entered a plea of nolo contendere in September 1990.

The matter was referred to Hearing Committee [    ], which was chaired by [    ], Esq., and included [    ], Esq., and [    ], Esq. A hearing on the matter was held on February 27, 1992. On that date, the parties stipulated to the facts underlying the petition for discipline.

The Hearing Committee filed its report on July 30, 1992, and recommended a two-year suspension, retroactive to the Supreme Court order of May 21, 1991.

The matter was adjudicated at the October 23, 1992 meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## II. *Findings of Fact*

The following findings are based upon the evidence presented to the Hearing Committee:

(1) Petitioner, whose principal office is located at Suite 400, Union Trust Building, 501 Grant Street, Pittsburgh, Pa., is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent, [    ], was admitted to the practice of law in the Commonwealth of Pennsylvania on or about December 5, 1986.

(3) Respondent's residence is located at [    ].

(4) Respondent is married and has three minor children.

(5) Respondent received his undergraduate degree from [    ] University in 1980.

(6) Respondent received his legal training at [    ] University School of Law in the evening program from 1982-1986 and received his law degree in 1986.

(7) Respondent practiced law on a part-time basis as a sole practitioner from on or about December 5, 1986 until on or about May 21, 1991.

(8) In 1986, in addition to practicing law, respondent commenced employment as a "youth advocate" in the [A] Program.

(9) [A] is a private agency that has a contract with the [    ] Department of Human Services to provide social services to youths who are adjudicated delinquent by the [    ] Juvenile Court.

(10) Under [A], youths who have cases in the [    ] Juvenile Court are committed to the program as an alternative to residential placement.

(11) As a youth advocate, respondent was assigned a case load of three to ten youths.

(12) During the time when respondent was employed by [A], youth advocates received wages based upon their submission of time sheets to [A].

(13) The time sheets required respondent to state the amount of time he spent with each youth during the preceding week and the activity in which the youth and the respondent were engaged.

(14) Advocates are paid on a per youth, per hour basis.

(15) On or about March 28, 1989, a presentment was issued by a [    ] County grand jury recommending the arrest of respondent and referring the matter to the District Attorney of [    ].

(16) The presentment alleged that respondent claimed wages for nine days where he submitted inconsistent time sheets to [A] and that respondent was involved in a conspiracy to falsify [A] time sheets.

(17) By order dated March 28, 1989, the [    ] Court of Common Pleas accepted that presentment.

(18) Bills of indictment and criminal transcripts were issued which charged respondent with violating the following sections of the Pennsylvania Crimes Code (18 Pa.C.S.); section 911, corrupt organizations; section 903, criminal conspiracy; section 3921, theft; section 901, criminal attempt (theft, three counts); section 4911, tampering with public records (13 counts); and section 5101, obstruction of the administration of law or other governmental function.

(19) The charges against respondent listed 13 instances in which he submitted fraudulent claims to [A], including three in which the allegedly supervised youth was at work during the reported service period, three in which various supervisors were arrested during such period, three in which respondent himself was incarcerated during the claimed service hours, and two in which two inconsistent claims were filed.

(20) On September 4, 1990, respondent completed and signed a written guilty plea colloquy and entered a plea of nolo contendere to Informations 2581 and 2582, charging tampering with public records and information and criminal conspiracy, in violation of sections 4911 and 903 of the Pennsylvania Crimes Code.

(21) The remaining charges were dismissed.

(22) Following the entry of the plea, the Honorable [B] of the Court of Common Pleas, [ ] County, found respondent guilty on both informations and sentenced respondent to two years non-reporting probation on each information, to run concurrently. Respondent was also fined $1,000 on Information 2581 plus costs of $25.

(23) The number of allegedly unsubstantiated hours listed in respondent's time sheets totalled approximately 30.

(24) The youth advocate hourly wage in effect during respondent's employment at [A] ranged from $2.65/youth/hour ·to $3.50/youth/hour.

(25) The total amount of wages at issue was approximately $98.

(26) Respondent remained as a youth advocate at [A] almost one and one-half years following his arrest.

(27) Upon respondent's plea and the court's entry of conviction, [A] terminated respondent's employment as a youth advocate in September 1990.

(28) As of February 27, 1992, respondent had paid $200 of the fine imposed upon him.

(29) Respondent has not violated the terms of his probation and suspension.

(30) Respondent has no other disciplinary record in front of the Disciplinary Board or any court.

(31) Respondent is currently suspended from the practice of law in Pennsylvania by order of the Supreme Court of Pennsylvania dated May 21, 1991, entered pursuant to Enforcement Rule 214(d).

(32) Respondent filed with the Disciplinary Board a statement of compliance with the suspension order dated June 5, 1991.

(33) [C], Esq., testified that he has known respondent in a professional capacity for the past eight years, and that he has an excellent reputation despite his conviction.

(34) [D], a participant in the [A] Program, and [E], father of a program participant, also attested to respondent's favorable reputation.

(35) Respondent appeared contrite and responsible at the February 27, 1992 hearing on the matter.

### III. *Conclusions of Law*

Respondent's September 1990 conviction is a conviction within the scope of Rule 214(d), Pa.R.D.E.

Respondent's conviction constitutes a per se independent basis for discipline under Rule 203(b)(1), Pa.R.D.E.

Respondent's misconduct is grounds for discipline regardless of the fact that his actions occurred outside the scope of an attorney-client relationship, Rule 203(a), Pa.R.D.E.

### IV. *Discussion*

Respondent's criminal conviction for violation of sections 4911 and 903 of the Pennsylvania Crimes Code provides an absolute basis for the imposition of discipline under Pennsylvania's Rules of Disciplinary Enforcement, Rule 203(b)(1), Pa.R.D.E. The only issue before this board is the correct measure of discipline for this respondent.

In order to determine the appropriate sanction for a lawyer whose unprofessional conduct occurred as the result of criminal action, the Disciplinary Board must "consider the events which surround the criminal charge in order to 'weigh the impact of the conviction upon the measure of discipline.' " *Office of Disciplinary Counsel*

*v. Eilberg,* 497 Pa. 338, 441 A.2d 1193 (1982), quoting *Office of Disciplinary Counsel v. Troback,* 477 Pa. 318, 383 A.2d 952 (1978). See also, *Office of Disciplinary Counsel v. Costigan,* 526 Pa. 16, 584 A.2d 296 (1990).

Respondent's illegal conduct occurred while he was employed at the [A] Program, in a position in which he supervised young offenders and provided them with guidance and recreation. Respondent pled nolo contendere to allegations of tampering with public records and criminal conspiracy while employed as a youth advocate. The gravamen of the charge against respondent was that he had falsified 30 work hours over the course of four years, totaling a loss of $98, along with coworkers, who also provided dishonest work claims. Respondent was sentenced to two years of non-reporting probation and ordered to pay a $1,000 fine.

The events surrounding the criminal charge which brought respondent before this board are serious and certainly mandate the imposition of discipline. Any infringement upon public trust by one who has sworn an oath as an officer of the court and pledged to uphold the laws of this Commonwealth and nation is certainly an affront to the integrity of the legal profession. However, respondent's conduct, distasteful as it is, is not so patently offensive as to warrant serious disciplinary sanction.

We reach this conclusion based on a consideration of all the facts presented to the Hearing Committee. Respondent had practiced law in this Commonwealth without incident prior to this matter. As attested to by both a participant in the [A] Program and the father of a participant, respondent (who also holds a master's degree in social work) made a positive contribution to underprivileged youth in his role as an advocate. The fal-

sification of work claims, although dishonest, did not injure any party other than respondent, although this in no way mitigates his conduct.

As always, we are mindful that the proper measure of discipline will uphold both the interests of the public and the integrity of the bar. See *Office of Disciplinary Counsel v. Stern*, 515 Pa. 68, 526 A.2d 1180 (1987). Criminal conduct by a member of the Pennsylvania bar, regardless of the context in which it occurs, requires discipline. However, it is our belief that both the public and the bar will be adequately protected in this instance if respondent is removed from the practice of law for a period of time sufficient to reflect the gravity of his crime. We believe that an 18-month suspension from the bar, retroactive to the May 21, 1991 order removing him from practice, will accomplish this goal.

## V. *Recommendation*

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that respondent, [    ], be suspended from the practice of law for a period of 18 months retroactive to the May 21, 1991 Supreme Court order. It is further recommended that the court direct that respondent pay all of the necessary expenses incurred in the investigation and processing of this matter pursuant to Rule 208(g), Pa.R.D.E.

Board Member Kerns dissents and would recommend a two-year suspension retroactive to May 21, 1991.

Ms. Flaherty did not participate in the adjudication.

## ORDER

And now, July 1, 1993, upon consideration of the report and recommendations of the Disciplinary Board dated March 8, 1993, it is hereby ordered that [respondent]

be and he is suspended from the bar of this Commonwealth for a period of 18 months, retroactive to May 21, 1991, and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Mr. Justice Larsen dissents and would suspend the respondent for one year and waive enforcement costs.